Nos. 25-1611, 25-1612

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

AMERICAN PUBLIC HEALTH ASSOCIATION, *et al.*,

        Plaintiffs-Appellees,

v.

NATIONAL INSTITUTES OF HEALTH, *et al.*,

        Defendants-Appellants.

COMMONWEALTH OF MASSACHUSETTS, *et al.*,

        Plaintiffs-Appellees,

v.

ROBERT F. KENNEDY, JR., in his official capacity as Secretary of Health and Human Services, *et al.*,

        Defendants-Appellants.

On Appeal from the United States District Court
for the District of Massachusetts

# REPLY IN SUPPORT OF TIME SENSITIVE
# MOTION FOR STAY PENDING APPEAL

        BRETT A. SHUMATE
          *Assistant Attorney General*

        LEAH B. FOLEY
          *United States Attorney*

        DANIEL TENNY
        BENJAMIN C. WEI
          *Attorneys, Appellate Staff*
          *Civil Division, Room 7235*
          *U.S. Department of Justice*
          *950 Pennsylvania Avenue NW*
          *Washington, DC 20530*
          *(202) 616-2875*

# TABLE OF CONTENTS

**<u>Page</u>**

INTRODUCTION ................................................................................................... 1

ARGUMENT .......................................................................................................... 2

I. The Government is Likely to Succeed On the Merits ................................. 2

    A. The District Court Lacked Jurisdiction to Enforce a Contractual Obligation to Pay Money ................................................................... 2

    B. The Grant Terminations Were Committed to Agency Discretion by Law ................................................................................................ 8

    C. The Grant Terminations Were Reasonable and Reasonably Explained ......................................................................................... 10

II. The Equitable Factors Favor a Stay Pending Appeal ............................... 10

CONCLUSION ..................................................................................................... 11

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# INTRODUCTION

In *Department of Education v. California*, 145 S. Ct. 966 (2025) (per curiam), the Supreme Court stayed an order reversing the termination of grants at the behest of some of the very same States that are plaintiffs here, explaining that "the Government is likely to succeed in showing the District Court lacked jurisdiction to order the payment of money under the [Administrative Procedure Act (APA)]." *Id.* at 968. The district court in this case expressly disregarded that conclusion, choosing instead to adopt the "views of the dissenters" and the decision by this Court that the Supreme Court effectively reversed. App. 279.

Unable to defend that choice, plaintiffs claim their case is really a challenge to guidance memoranda about policy priorities rather than to the grant terminations themselves. This argument would have been equally available in *California* and belies the harm plaintiffs invoke, the remedy they sought, and the relief the court ordered.

Even apart from that dispositive jurisdictional bar, plaintiffs are wrong to suggest that the district court was entitled to engage in arbitrary-and-capricious review of funding decisions, which are instead committed to agency discretion by law. Plaintiffs' observation that various statutes define research priorities is irrelevant, as none of the cited authorities require any particular grant be funded or purport to limit the defendants' discretion to determine which grants best serve those research priorities. Plaintiffs' arbitrary-and-capricious claim also fails on the merits. In

insisting that the defendants engaged in no individualized review, plaintiffs do not address the fact that grants were not categorically terminated.

On the equities, the Supreme Court likewise explained a stay of an order reversing the termination of grants is warranted since the government suffers irreparable harm because it is "unlikely to recover the grant funds once they are disbursed," while a stay would not prevent plaintiffs from "recover[ing] any wrongfully withheld funds through suit in an appropriate forum." 145 S. Ct. at 969. Plaintiffs' carefully worded insistence that under some circumstances the government might be able to recover some funds does not refute that reasoning. Accordingly, a stay is warranted.

## ARGUMENT

### I. The Government is Likely to Succeed On the Merits

#### A. The District Court Lacked Jurisdiction to Enforce a Contractual Obligation to Pay Money

The Supreme Court made clear in *Department of Education v. California*, 145 S. Ct. 966 (2025) (per curiam), that a district court lacks jurisdiction to order the reversal of grant terminations under the APA. That case, which was brought by some of the same States that are plaintiffs here, challenged the termination of grants by the Department of Education pursuant to an "internal directive requiring Department personnel to review issued grants to ensur[e] that Department grants do not fund discriminatory practices that are contrary to law or to the Department's

2

policy objectives" and expressly extending to "practices . . . in the form of [diversity, equity, and inclusion ("DEI")].'" *Id.* at 970-71 (alterations in original). The district court found the grant terminations were arbitrary and capricious in violation of the APA and ordered their reversal. *California v. U.S. Dep't of Educ.*, 132 F.4th 92, 98 (1st Cir. 2025). In issuing a stay of that order, the Supreme Court explained that "the APA's limited waiver of immunity does not extend to orders to enforce a contractual obligation to pay money along the lines of what the District Court ordered here." *California*, 145 S. Ct. at 968 (quotation omitted). That explanation applies here. *See Sustainability Inst. v. Trump,* No. 25-1575, 2025 WL 1587100, at *2 (4th Cir. June 5, 2025) (staying injunction reversing grant terminations based on *California*).

1. The district court expressly disregarded the Supreme Court's explanation as "not binding on this Court," App. 276, and chose instead to adopt the "views of the dissenters" in *California* and the decision by this Court that *California* effectively reversed, App. 279. Plaintiffs do not defend this choice, other than to note that *California* arose in an emergency posture. But that observation merely underscores that the Supreme Court was resolving the exact question before this Court: whether to issue a stay pending appeal. This Court should follow the Supreme Court's lead.

2. Plaintiffs' effort to distinguish *California* primarily relies on an argument that this case is not really about the grant terminations but instead about the internal guidance that described the list of subjects that were not considered the administration's priorities, which the court referred to as the "Challenged Directives."

3

*See, e.g.*, APHA Opp'n 10 ("The heart of the Judgment, which set-aside the Directives, is an assurance that research topics are not arbitrarily and prospectively banned."); States Opp'n 12 ("[P]laintiffs' arbitrary-and-capricious claims centers on the Challenged Directives . . . ."). The same argument would have been available in *California*, where the Acting Secretary of Education issued an "internal directive" to identify and terminate grants that fund DEI. *California*, 145 S. Ct. at 970-71. Plaintiffs cannot plausibly suggest that *California* would have come out differently if the plaintiffs had characterized their claim as attacking the directive rather than the ensuing grant terminations.

In any event, this reframing does not work to evade jurisdictional limits because it is not consistent with the harms plaintiffs claim and the relief that plaintiffs asked for and received from the district court. More precisely, the harms that plaintiffs claim—the very reason they brought this suit—all stem from the government's failure to pay. *See, e.g.*, APHA Opp'n 3 (noting that plaintiffs "rely on NIH funding"); States Opp'n 29. Since "it is the operative grant agreements which entitle any particular Plaintiff to receive federal funds," *Sustainability Inst.*, 2025 U.S. App. LEXIS at *7, the relief that plaintiffs asked for was not limited to invalidating the Challenged Directives but extended to reversing a list of grant terminations, App. 348 (states case); App. 351 (APHA case). And that is the relief they got. As the district court recognized, the essential effect of its order was the "forthwith [] disbursement of funds both appropriated by the Congress of the United States and

4

allocated heretofore by the defendant agencies." App. 339-340. This suit is thus not a challenge to some overarching regulatory action, but rather a suit for "past due sums" from the government. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002).

The State plaintiffs defend the mismatch between their alleged challenge only to the Challenged Directives and the relief they sought and obtained by reasoning that "the Challenged Directives were the *only* basis for the resulting grant terminations" and it therefore "follows that the court had jurisdiction to vacate the terminations." States Opp'n 13. Each step of that logic is flawed.

As a factual matter, the Challenged Directives only provided guidance. They did not conclusively delineate every grant that should be terminated, *see* App.442 n.8 (citing testimony that the agency was to use their "scientific background" and knowledge of their programs to identify grants that should be terminated), and plaintiffs do not dispute that over a dozen grants researching minority-health-related topics were not terminated. Indeed, the district court's fundamental objection to the Challenged Directives was that they did not provide enough guidance. App. 503. Moreover, the Challenged Directives did not provide the authority for the grant terminations, which instead arose from a grant term. App. 415 (authorizing termination of a grant "if an award no longer effectuates the program goals or agency priorities"). Whether the defendants had the authority to terminate the grants is therefore a question under the contract, and nothing about the Challenged Directives

5

changes that. And there is nothing unlawful about giving general directives to staff about how to exercise their discretion.

Even if plaintiffs are correct that the district court could consider the Challenged Directives alone, it does not necessarily follow that the court could also order the reversal of 1,448 specific grant terminations. As this Court has recognized, "[t]he appropriate inquiry must be whether each particular plaintiff is entitled to have a federal court adjudicate each particular claim that he asserts." *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 733 (1st Cir. 2016) (quotation marks omitted). "[A] judicial order vacating an agency rule does not *automatically* void every decision the agency made pursuant to the invalid rule." *D.A.M. v. Barr*, 486 F. Supp. 3d 404, 414 (D.D.C. 2020) (collecting cases). The district court implicitly recognized that principle when it declined to exercise jurisdiction over grants that do not involve the plaintiffs to this case, and the same logic applies when the jurisdictional barrier is the Tucker Act rather than standing.

3. Plaintiffs once again run headlong into *California* when they insist that *Bowen v. Massachusetts*, 487 U.S. 879 (1988), supports the district court's jurisdiction. The Supreme Court expressly distinguished *Bowen*—which did not involve contracts with the government and was instead a dispute over the policy governing reimbursement under Medicaid—in *California*, and the Court's reasoning applies equally here. *California*, 145 S. Ct. at 968.

4. The APHA plaintiffs' contention that grants are not contracts, APHA Opp'n 12, similarly cannot be reconciled with *California*, which also involved grants. And even if grants and contracts are distinguished for some purposes, the relevant point is that the grants at issue here have enough features of a contract to trigger Tucker Act jurisdiction. *See Bennett v. New Jersey*, 470 U.S. 632, 638 (1985) (noting that "many . . . federal grant programs" are "much in the nature of a contract") (quotation omitted); *see also Columbus Reg'l Hosp v. United States*, 990 F.3d 1330, 1338 (Fed. Cir. 2021) ("[F]ederal grant agreements [are treated] as contracts when the standard conditions for a contract are satisfied, including that the federal entity agrees to be bound.").

5. Finally, plaintiffs argue that this case cannot be consigned to the Court of Federal Claims because that court lacks the equitable authority to provide prospective relief. APHA Opp'n 10; States Opp'n 19. But plaintiffs' inability to obtain prospective relief—that is, specific performance—reflects the fact that, as this Court has long recognized, federal courts "do not have the power to order specific performance by the United States of its alleged contractual obligations." *See Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 3-4 (1st Cir. 1989). Plaintiffs cannot avoid the forum that Congress chose because they are dissatisfied with the remedies that Congress provided. And there is no support for plaintiffs' counterintuitive view that although the parties to a contract cannot obtain injunctive relief, nonparties have a greater right to relief than the parties themselves because they cannot obtain damages.

7

APHA Opp'n 13. Rather, the proper inference is that Congress limited relief to an award of damages to the parties to the contract. *See Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349 (1984) ("[A]t least when a statute provides a detailed mechanism for judicial consideration of particular issues at the behest of particular persons, judicial review of those issues at the behest of other persons may be found to be impliedly precluded.").

### B. The Grant Terminations Were Committed to Agency Discretion by Law

Plaintiffs' claims are independently barred because the decision to discontinue funding programs to reallocate those funds to more productive uses is committed to agency discretion by law. 5 U.S.C. § 701(a)(2).

1. Plaintiffs do not contest that at issue here are lump-sum appropriations. APHA Opp'n 16; States Opp'n 23. The "allocation of funds from a lump-sum appropriation is," the Supreme Court explained, an "administrative decision traditionally regarded as committed to agency discretion" because the "very point of a lump-sum appropriation is to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way." *Lincoln v. Vigil*, 508 U.S. 182, 192 (1993). For that reason, the decision here to discontinue grants funded by a lump-sum appropriation to reallocate those resources toward more productive uses is "committed to agency

discretion by law and therefore not subject to judicial review under the Administrative Procedure Act," *id.* at 184 (quoting 5 U.S.C. § 701(a)(2)).

2. Plaintiffs cannot defeat that preclusion of review by citing general statutory research priorities. APHA Opp'n 15. There is no evidence that research in those areas is not being funded; as noted above, for example, over a dozen grants researching minority-health-related topics were not terminated. Indeed, the district court declined to find the grant terminations violated any statute, App. 516, and expressly rejected plaintiffs' argument there was a violation of research priorities articulated in the applicable regulations, App. 101-102. As the Supreme Court explained, "as long as the agency allocates funds from a lump-sum appropriation to meet permissible statutory objectives, § 701(a)(2) gives the courts no leave to intrude." *Lincoln*, 508 U.S. at 194.

3. Finally, the State plaintiffs argue this argument was forfeited because it was not included in the defendants' stay motion. States Opp'n 23. But the point was made in merits briefing and addressed by the district court, App. 286, and the stay motion referred to the "other reasons argued by Defendants throughout the various briefs filed in these two cases." Dkt. 154 at 6. This argument is not being surfaced for the first time in this Court.

### C. The Grant Terminations Were Reasonable and Reasonably Explained

Lastly, the grant terminations would be upheld under the arbitrary-and-capricious standard, which "requires that agency action be reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). As explained, the challenged grant terminations came after an individualized review and were accompanied by a written notice detailing the reasons for termination. *See, e.g.*, App. 365.

Plaintiffs continue to insist that there was no individualized review because of the purported speed of the terminations, APHA Opp'n 18, and the use of "boilerplate letters" explaining the reasons for termination, States Opp'n 25. But plaintiffs gloss over the fact that not every grant covering allegedly blacklisted topics was terminated, including over a dozen grants researching minority-health-related topics. Moreover, because the grants were being terminated for a common characteristic (such as funding research based on equity objectives), it was reasonable to provide a common explanation to grantees. Indeed, treating similarly situated grants equally is required by the APA, for "[r]easoned decisionmaking requires treating like cases alike." *Hall v. McLaughlin*, 864 F.2d 868, 872 (D.C. Cir. 1989).

## II. The Equitable Factors Favor a Stay Pending Appeal

The Supreme Court also made clear in *California* that the equitable factors favored a stay of an order reversing the termination of grants because the government

10

suffers irreparable harm because it is "unlikely to recover the grant funds once they are disbursed," while a stay would not prevent plaintiffs from "recover[ing] any wrongfully withheld funds through suit in an appropriate forum." 145 S. Ct. at 969.

Plaintiffs advance a carefully worded response that "defendants have mechanisms to recover any funds improperly paid to grantees." States Opp'n 27; *see also* APHA Opp'n 19. But none of the plaintiffs have promised to return all funds they received as a result of the district court's order if it is ultimately reversed on appeal. And even if "a stay would work a hardship on Plaintiffs, the existence of burdens on each side points back to the preeminence of the likelihood-of-success inquiry, which in this case favors the Government." *Sustainability Inst.*, 2025 U.S. App. LEXIS 14121 at *8.

## CONCLUSION

For the foregoing reasons and those in the government's motion, the Court should grant a stay pending appeal.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

LEAH B. FOLEY
  *United States Attorney*

DANIEL TENNY

*s/*
BENJAMIN C. WEI
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7235*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 616-2875*
  *benjamin.c.wei@usdoj.gov*

July 2025

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2563 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/*
Benjamin C. Wei

## CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*s/*
Benjamin C. Wei